UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JANICE FAIL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:16-cv-01393-JEO ) |
| THE UNIVERSITY OF ALABAMA OPHTHAMOLOGY SERVICE FOUNDATION, | ) ) ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

The court has before it the November 3, 2017 motion for summary judgment filed by Defendant University of Alabama Ophthalmology Service Foundation ("OSF"). (Doc. 9). Pursuant to the court's initial order (Doc. 6), the motion was under submission as of December 8, 2017. After consideration of the briefs and evidence, the motion is due to be granted for the following reasons.

## I. STATEMENT OF FACTS

OSF is a multispecialty ophthalmology practice with clinics located in the Callahan Eye Hospital and several satellite offices around Alabama. (Doc. 11-3 ("Grover Aff.") ¶ 2). Plaintiff began her employment with OSF in 2005 as an office manager, but resigned in 2007. (Doc. 11-1 ("Pl. Dep.") at 14-19). In the spring of 2013, she applied for employment with OSF, and in June 2013, OSF

hired Plaintiff as the Clinical Coordinator with an annual salary of $44,000 with the possibility of a $2,000 performance bonus. (Pl. Dep. at 40-44; Doc. 11-2 at 1; Grover Aff. ¶ 12). Personnel Manager Cassandra Page, an African American female, and then-Operations Manager[1] Rett Grover, a white male, made the decision to hire Plaintiff. (Grover Aff. ¶12; Doc. 11-3 ("Page Aff.") ¶ 3).

As the Clinical Coordinator, Plaintiff supervised front office representatives, surgery schedulers, and phone representatives for OSF's seven clinics. (Pl. Dep. at 48). Physicians reported any issues with clerical employees and other office-related concerns, such as an unsatisfactory job by the cleaning crew, to Plaintiff. (*Id*. at 63-64). She assisted with employee scheduling, kept track of attendance, and filled in for clerical employees as needed. (*Id*. at 48-49). Plaintiff also monitored call volume and patient flow. (*Id*. at 49-51). She handled patient complaints about non-medical issues, such as wait time, bills, or co-pays. (*Id*. at 53).

OSF steadily expanded its operations during Plaintiff's employment with the addition of multiple new clinics and a rise in patient volume. (Grover Aff. ¶¶ 5-8). Sometime in 2013, OSF decided to integrate its clinics into the Callahan Eye Hospital system to gain financial support for OSF's continued expansion, streamline management services, and better align physician practice and hospital

---

[1] Grover became the Chief Operating Officer of the Callahan Eye Hospital in October 2015. (Grover Aff. ¶ 3).

operations.  (*Id*. ¶¶ 9-10).  As part of this expansion and integration, Grover decided to restructure OSF's administrative support in the spring of 2014.  (*Id*. ¶¶ 13-14).

Grover eliminated the Clinical Coordinator position and created a new Lead Office Representative ("LOR") role.  (*Id*. ¶ 14).  With the elimination of this position and the addition of five new LOR positions, the clinics would have an LOR to schedule office employees, monitor attendance, and fill in where needed, instead of one central Clinical Coordinator to do the work for all the clinics.  (*Id*. ¶ 14-15).  Grover believed replacing one position with five LORs would provide better administrative support for OSF's operations.  (*Id*. ¶ 15).

OSF selected five existing employees for the new LOR positions: Jennifer Boudreau Lorino, a white female; Kim Odom, a white female; MacKenzie Rush, a black male; Jacqueline Ward, a white female; and Tiffany Williams, a black female. (Page Aff. ¶ 4).  The new LORs absorbed the former Clinical Coordinator responsibilities for their clinics, in addition to the responsibilities they were already handling as front office representatives or surgery schedulers.  (Page Aff. ¶ 5). Each LOR received a raise for assuming the additional duties.  (*Id*. ¶ 5).  All were paid less than Plaintiff.  (*Id.* ¶ 15; Doc. 11-4 at 7-25).

Around the same time as this new position was created, in late June 2014, Plaintiff told Cassandra Page, the OSF Personnel Manager, that African-American clerical employees were being unfairly assigned to clinics with heavier workloads. (Pl. Dep. at 73-76). Plaintiff told Page she did not agree with the work assignments and that white clerical employees were being assigned the outlying clinics with less workloads. (*Id*.) When she tried to change the work assignments, Plaintiff said doctors would complain and the assignments would be returned to the pattern of African Americans at the busiest clinics. (*Id*.). Page did not tell anyone about Plaintiff's comments. (Page. Aff. ¶ 12).

A few weeks later, in early July 2014, Page told Plaintiff her position had been eliminated and her employment would be terminated effective July 9, 2014. (*Id*. ¶ 7). Page was not involved in the decision to eliminate the position and terminate Plaintiff. (*Id*.). Plaintiff received severance benefits in accordance with OSF's position elimination policy. (*Id*. ¶ 14; Doc. 11-2 at 4-7).

Plaintiff filed an EEOC charge on December 18, 2014, alleging discrimination on the basis of his race and retaliation. (Doc. 11-2 at 3). After an investigation, the EEOC dismissed Plaintiff's charge on April 26, 2016, and she timely filed her complaint on July 26, 2016. (Page Aff. ¶ 13; Doc. 1-2 at 6-10).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

## III. DISCUSSION

Plaintiff's complaint states three claims: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e, *et seq.* ("Title VII") and 29 U.S.C. § 1981; (2) retaliation in violation of Title VII and § 1981; and (3) a violation of the Equal Pay Act, 29 U.S.C. § 206(d) ("EPA"). (Doc. 1-2 at 6-10). After careful review and for the reasons stated below, the court concludes there are no material issues of fact and Defendant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

### A. Race Discrimination in violation of Title VII and § 1981[2]

Title VII makes it unlawful for employers to discharge or otherwise discriminate against an employee because of race. 42 U.S.C. § 2000e. Absent direct evidence of discrimination, a plaintiff may prove her case through circumstantial evidence using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). The plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id*. After a prima facie case is established, the

---

[2] Because Title VII and § 1981 have the same requirements of proof and use the same analytical framework, *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998), the court addresses the Title VII claims with the understanding that the analysis applies to the § 1981 claims as well.

6

employer has the burden to articulate a legitimate, nondiscriminatory reason for the employment decision. *Wilson*, 376 F.3d at 1087. This burden involves no credibility determination, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, (1993), and has been characterized as "exceedingly light." *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983). As long as the employer articulates "a clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden of production. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981). After an employer articulates one or more legitimate, non-discriminatory reasons for the employment action, the plaintiff must show the proffered reason was a pretext for illegal discrimination. *Id*. If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must "meet that reason head on and rebut it." *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000). Although the burden of production shifts back and forth, the ultimate burden of persuasion remains with the plaintiff. *E.E.O.C. v. Joe's Stone Crabs, Inc.,* 296 F.3d 1265, 1272 (11th Cir. 2002).

Additionally, the court is mindful that in *Sims v. MVM, Inc.,* 704 F.3d 1327, 1332–1333 (11th Cir. 2013), the Eleventh Circuit clarified that the *McDonnell Douglas* framework is not the only way for a plaintiff to survive summary judgment in a discrimination case. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d

7

1321, 1328 (11th Cir. 2011). Rather, "[t]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.* A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decision maker. *Id.; see generally Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012).

1. **Prima facie case of discrimination**

Because this case involves a discharge because of the elimination of a position, Plaintiff may establish a prima facie case of discrimination by showing: (1) she was a member of a protected group; (2) she was adversely affected by an employment decision; (3) she was qualified for her own position or to assume another position at the time of the discharge; and (4) "sufficient evidence from which a rational fact finder could conclude that [her] employer intended to discriminate against [her] in making the discharge decision." *Standard*, 161 F.3d at 1331. It is undisputed Plaintiff satisfies the first three prongs of the prima facie case. She is African American, was terminated from her employment and qualified for her position. Defendant contends, however, that Plaintiff has failed to satisfy the fourth prong of her prima facie case. (Doc. 10 at 11-12). The court agrees.

There is no evidence in the record from which a rational fact finder could conclude OSF discriminated against Plaintiff because of her race when it eliminated the Clinical Coordinator position and terminated Plaintiff. Instead the evidence shows race was not a factor in the decision at all. Plaintiff's duties were assigned to the LORs, two of whom are African American. (Page Aff. ¶ 4). Plaintiff's bald assertion that she was terminated because of her race is insufficient. As such, Plaintiff cannot establish a prima facie case and Defendant is entitled to summary judgment as to Plaintiff's claim of race discrimination.

2. **Defendant's legitimate, nondiscriminatory reason and Plaintiff's evidence of pretext**

Even if Plaintiff could establish a prima facie case, Defendant has carried its burden of articulating legitimate, nondiscriminatory reason for Plaintiff's termination. The undisputed facts establish OSF reorganized its administrative structure, eliminated the Clinical Coordinator position, and distributed the position's responsibilities to the LORs.

Because Defendant satisfied its burden of production of a legitimate, non-discriminatory reason for Plaintiff's termination, Plaintiff must come forward with evidence sufficient to permit a reasonable fact finder to conclude the reasons Defendant gave were pretextual. *Burdine*, 450 U.S. at 253. Plaintiff may do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendant's] proffered legitimate reasons for its actions that a

reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1348-50 (11th Cir. 2007). Importantly, conclusory allegations of discrimination, without more, are insufficient to show pretext. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). "A reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006).

To show pretext, a plaintiff may not merely quarrel with the wisdom of the employer's reason but must meet the reason head on and rebut it. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010); *Chapman*, 229 F.3d at 1034. The inquiry into pretext is based on "the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). As the Eleventh Circuit explained, "to be blunt about it," the inquiry does not center "on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266 (explaining the question is not whether the employee actually had performance problems but "whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints . . . as cover for" discrimination).

Plaintiff does not make any attempt to establish pretext in opposition to summary judgment, and, the record shows no evidence of pretext at all. Simply put, there is no evidence before the court that the reason stated by Defendant for her termination was false or otherwise a pretext for race discrimination. As such, Defendant is entitled to summary judgment on Plaintiff's disparate treatment claim.

### 3. Mixed Motive

Although Plaintiff does not discuss her burden under the *McDonnell Douglas* framework, she instead argues her claim survives under a mixed-motive analysis. To survive summary judgment on a mixed motive claim, a plaintiff must show "(1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was a motivating factor for the defendant's adverse employment action." *Quigg v. Thomas Cty. Sch. Dist.,* 814 F.3d 1227, 1232–33 (11th Cir. 2016) (alteration in original). To prove race was a motivating factor in her position elimination, Plaintiff must show that OSF's decision would have been different if she belonged to a different race. *Lewis v. Metro. Atlanta Rapid Transit Auth.*, 343 F. App'x 450, 455 (11th Cir. 2009).[3]

Although Plaintiff's termination is an adverse employment decision, she has no evidence whatsoever that her race was even considered, let alone was a

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

motivating factor, in the decision to eliminate her position. Grover clearly stated he did not consider her race in the decision. (Grover Aff. ¶ 19). Plaintiff has not presented any evidence to rebut this statement. Because Plaintiff did not establish she would not have been terminated if she were not African American, her claim under a mixed motive theory fails as a matter of law.

### B. Retaliation in violation of Title VII and § 1981

As in the discrimination context, where proof of retaliatory intent is offered by way of circumstantial evidence, as here, courts apply a burden-shifting scheme analogous to the *McDonnell Douglas* framework outlined above. *Holifield*, 115 F.3d at 1566; *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1162-3 (11th Cir. 1994). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Once the employer proffers a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff to show the legitimate reason was pretext for prohibited retaliatory conduct. *Id.*

#### 1. Plaintiff failed to establish a prima facie case of retaliation.

To establish a Title VII retaliation claim based on circumstantial evidence, Plaintiff must show: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) there is a causal connection between the two events. *See Crawford*, 529 F.3d at 970; *see also*

*Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010); *Goldsmith v. Bagby Elevator Co., Inc.,* 513 F.3d 1261, 1277 (11th Cir. 2008).

Plaintiff's retaliation claim fails on the element of causation. As the Supreme Court observed in *University of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338, 361 (2013), "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*. In other words, a plaintiff making a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id*. at 2534.

Plaintiff cannot establish her protected activity was the but-for cause of her termination because Grover, the person who decided to eliminate Plaintiff's position, did not know she complained about race discrimination or engaged in any protected activity. Plaintiff's only purported protected activity before her termination was her comments to Page in late June of 2014 about African American employees' unfair work assignments. (Pl. Dep. at 96). The only person to whom Plaintiff made these comments was Page. (*Id*. at 104). Page did not tell anyone about her comments and Grover testified he had no knowledge of the conversation. (Page Aff. ¶ 12; Grover Aff. ¶ 20).

13

It is undisputed Page was not involved in the decision to eliminate Plaintiff's position and Grover made that decision. (Grover Aff. ¶¶ 18-20; Page Aff. at ¶7). Plaintiff's speculative testimony that Page was involved in the decision simply because she works in Human Resources and contributed to termination decisions in the past is not supported by the record. (Pl. Dep. at 108-09). Because Plaintiff cannot establish the decision maker was aware of her alleged protected activity, she cannot show the comments were the but-for cause of the decision.

Plaintiff provides no argument as to how her complaint to Page was the "but-for cause" of her termination. Instead, Plaintiff argues the close temporal proximity between her comments and her termination alone is sufficient to survive summary judgment as to her retaliation claim. (Doc. 12 at 5-8). Plaintiff's argument is unpersuasive. The Eleventh Circuit has repeatedly made clear that temporal proximity alone is insufficient to survive summary judgment. This is especially true where, as here, the decision maker was unaware of the protected activity. *Brungart v. Bellsouth Telecomms., Inc.*, 231 F.3d 791, 800 (11th Cir. 2006) ("temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct"). Plaintiff's retaliation claim fails as a matter of law.

## C. Equal Pay Act

The EPA requires Plaintiff to show "that the employer paid employees of opposite genders different wages for equal work for jobs which require 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)). If Plaintiff establishes a prima facie case, the defendant may avoid liability by proving the pay differences are based on one of the EPA's four exceptions: "'(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex.'" *Id.* at 1078 (quoting 29 U.S.C. § 206(d)(1)). If Defendant meets this burden, Plaintiff "must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." *Id.* (internal quotation marks omitted).

Plaintiff cannot satisfy her burden under the EPA. Plaintiff has not presented any evidence that OSF paid a male employee more for performing equal work on a job requiring equal skill, effort, and responsibility. As Clinical Coordinator, Plaintiff handled clerical employee schedules, monitored attendance, filled in where needed, and addressed patient complaints. (Pl. Dep. at 45-53). When her position was eliminated, five LORs, four females and one male,

15

absorbed her duties. (Page Aff. ¶ 4). All of the LORs were paid less than Plaintiff. (*Id*. at 6; Doc. 11-4 at 7-25).

Without specifically naming him, Plaintiff seems to argue that Martin Smith, the Director of Ambulatory Operations ("DAO"), is an appropriate comparator for purposes of her EPA claim.[4] (Doc. 1-1 ¶¶ 30-34; Doc. 12 at 9-10). This comparison fails. The Clinical Coordinator position and the role DAO are not jobs requiring the same skill, effort, and responsibility. The DAO position requires a bachelor's degree in healthcare administration, business administration, or a similar field and relevant management experience. (Doc. 11-2 at 14). As DAO, Smith handled responsibilities for physician business practices, regulatory compliance, and clinical expansion and planned clinic infrastructure with new physicians, including implementation of information technology and medical equipment. (Doc. 11-6 ("Smith Aff.") ¶¶ 4-5). He did, however, manage non-physician employees, with assistance from the LORs and a head Ophthalmic Technician, including those who previously reported to Plaintiff. (*Id*. ¶ 11). Smith spent approximately twenty percent of his time managing those non-physician employees and eighty percent performing his other duties. (*Id*. ¶ 12).

---

[4] The court rejects Plaintiff's attempted comparison to an office manager job she held from 2005 to 2007. (Doc. 12 at 9). Plaintiff did not make this claim in her complaint. Plaintiff cannot pursue a claim based on her prior job for the first time in her brief in opposition to summary judgment. *Gilmour v. Gates McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004). Additionally, even if the court allowed the claim, it is clearly time barred under the EPA's three year statute of limitations. 29 U.S.C. § 255(a).

Although Plaintiff does not have to prove that the jobs are identical, she has "the heavy burden of proving 'substantial identity of job functions.'" *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989). Plaintiff cannot meet her burden. Although both Plaintiff and Smith managed clerical employees, Smith spent only twenty percent of his time doing so and his primary duties pertained to operational decisions about physician business practices, clinical expansions, and integration into the Callahan Eye Hospital organization. Broad similarities between a small percentage of Smith's job and Plaintiff's job as the Clerical Coordinator are inadequate. *See Rollins v. Alabama Cmty. Coll. Sys.,* 814 F. Supp. 2d 1250, 1315 (M.D. Ala. 2011) (holding plaintiff cannot establish prima facie case simply based on general similarities in position); *Byrd v. Auburn Univ. at Montgomery*, 2007 WL 1140424, at *9 (M.D. Ala. Apr. 17, 2007) (no prima facie case for EPA claim based on overlapping management tasks where primary duties of position were different).

Additionally, the DAO position required a bachelor's degree in healthcare administration, business administration, or a similar field where the Clinical Coordinator position required no such education. (Doc. 11-6 at 12). Finally, the DAO position entailed significant decision making about OSF's expansion, clinical infrastructure, and physician business practices. (Smith Aff. ¶¶ 4-10). These

responsibilities were far greater than those Plaintiff performed as the Clinical Coordinator.[5]

In summary, Plaintiff failed to show that OSF "paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger*, 318 F.3d at 1077-78 (internal quotations and citation omitted). As such, her claim under the EPA fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendant University of Alabama Ophthalmology Service Foundation is entitled to judgment as a matter of law on all the claims asserted in Plaintiff's complaint. As such, Defendant's motion for summary judgment (Doc. 9) is due to be granted. A separate order will be entered.

**DATED** this 20th day of July, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[5] Plaintiff points to two newspaper advertisements for positions she contends lists the responsibilities she had as Clinical Coordinator. (Doc. 12 at 9-10). One posting is for the DAO position and other is for a Manager of Clinic Operations. (Doc. 11-2 at 13-14). Her comparison to the DAO position fails for the reasons stated. As far as the Manager of Clinic Operations position, there is no evidence in the record regarding whether anyone was hired to fill this position, what the actual duties of the position entailed, or the salary for this position. (*See* Pl. Dep. at 114-15). Without any of this information, the advertisement does not aid Plaintiff's EPA claim.